THIRD AVENUE TRUST, Plaintiff,

v.

SUNTRUST BANK, Defendant.

No. 00 Civ. 6747(RLC).

United States District Court,
S.D. New York.

April 13, 2001.

Gibson, Dunn & Crutcher LLP, New York, New York, for the Plaintiff, Marshall R. King, of counsel.

Silverberg, Stonehill & Goldsmith, P.C., New York, New York, for the Defendant, Michael Goldsmith, Kenneth R. Schachter, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Third Avenue Trust ("Third Avenue") instituted this action against defendant SunTrust Bank ("SunTrust") to recover monies paid on two assignments. Third Avenue moves for partial summary judgment pursuant to Rule 56, F.R. Civ. P. SunTrust opposes this motion.

## BACKGROUND

Plaintiff Third Avenue is a Delaware business trust, with its principal place of business in New York, New York. (Cplt.¶ 4.) The trustees of Third Avenue are citizens of New York, Pennsylvania, Maryland, Texas, Connecticut and the District of Columbia. (Id.) Defendant SunTrust is a banking corporation, with its principal place of business in Atlanta, Georgia. (Cplt.¶ 5.)

In early August, 1997, pursuant to written assignments, Third Avenue purchased two claims from SunTrust, allegedly in the amount of $1,562,635.04 (the "First Claim") and $29,766.30 (the "Second Claim"), against Montgomery Ward & Co., Inc. ("Montgomery"), then a debtor in bankruptcy proceedings in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"). (Jarmain Decl. ¶¶ 2 & 4.) These claims were account receivable claims, whereby Third Avenue became the beneficiary of amounts due from Montgomery to various vendors. (Long Decl. ¶ 2.) In consideration, Third Avenue allegedly paid SunTrust 35.375 percent of the principal amount of the First Claim, or $552,782.15, and 30 percent of the principal amount of the Second Claim, or $8,929.89, per the parties' Pricing Letters. (Jarmain Decl. ¶¶ 3 & 5. & Exs. B & D.)

In both assignment contracts, SunTrust warranted that the claims against Montgomery were valid and undisputed. (Jarmain Decl., Exs. A & C, (hereinafter "Assignments") ¶ 3.) SunTrust agreed that if any objection or motion was made to disallow or reduce the claims, and such motion remained pending or unresolved for one hundred twenty days, it would repay the purchase price of the claims plus interest. (Assignments ¶ 6.) SunTrust further agreed to immediately repay the purchase price of the claims plus interest if Montgomery failed to substitute Third Avenue for SunTrust. (Id.) SunTrust covenanted to indemnify Third Avenue for all losses,

damages or liabilities arising from Sun-Trust's breach of warranty. (Assignments ¶ 7.)

On or about October 12, 1998, Third Avenue notified the Bankruptcy Court that the Second Claim was transferred from SunTrust to Third Avenue. (Jarmain Decl. ¶ 7.) The Bankruptcy Court did not substitute Third Avenue for SunTrust as the owner of the Second Claim. (Jarmain Decl. ¶ 8.)

On or about November 1, 1999, Montgomery moved to reduce the amount of the First Claim to $150,959.40 and the amount of the Second Claim to $28,873.32. (Jarmain Decl. ¶¶ 9 & 11.) Montgomery's motion with regard to the First Claim remained unresolved as of the date of the filing of this motion. (Jarmain Decl. ¶ 10.) The Bankruptcy Court granted Montgomery's motion to reduce the Second Claim on or about January 6, 2000. (Jarmain Decl. ¶ 12.)

Montgomery made no distributions to Third Avenue on any of the claims it purchased from SunTrust. (Jarmain Decl. ¶ 13.) Third Avenue therefore made demand on SunTrust for repayment of the purchase price of the claims, and SunTrust allegedly refused to make repayment. (Jarmain Decl. ¶¶ 14–15.) Third Avenue filed a claim against SunTrust on September 7, 2000, pursuant to 28 U.S.C. § 1332, asserting breach of contract, breach of implied covenant of good faith and fair dealing, conversion, and unjust enrichment.[1] After the complaint in the action was filed, SunTrust sent Third Avenue checks in the aggregate amount of $61,099.31, which had

mistakenly been sent to SunTrust by Montgomery. (Pl.'s Mem. p. 6, n. 4.) Third Avenue now moves for summary judgment on its two breach of contract claims.

### A.

To prevail on a motion for summary judgment under Rule 56, F.R. Civ. P., the moving party bears the initial burden of showing that there are no genuine issues of material fact to be tried, and that it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." F.R. Civ. P. 56(e). In addition, the court must independently search the record to determine if any issue of fact remains. *See Lakhaney v. Anzelone,* 788 F.Supp. 160, 162 (S.D.N.Y.1992) (Carter, J.).

### B.

Third Avenue's first and third causes of action allege breach of contract for SunTrust's failure to make repayment on the purchase price of the First and Second Claims, respectively. To establish a claim for breach of contract under New York law,[2] a plaintiff must show: "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525 (2d Cir.1994). Third Avenue has provid-

---

**1.** On October 31, 2000, SunTrust moved to dismiss this action pursuant to Rule 12(b)(7), F.R. Civ. P., for failure to join a party under Rule 19, F.R. Civ. P., or, in the alternative, to transfer this action from the Southern District of New York to the District of Delaware, pursuant to 28 U.S.C. § 1404(a). In an opinion dated April 2, 2001, the court denied both motions.

**2.** The assignments provide that New York law governs their construction and enforcement. (Assignments ¶ 9.) Under New York law, "[t]he intention of the parties, express or implied, generally determines the law that governs a contract." *Lakhaney,* 788 F.Supp. at 163 (citation omitted).

ed affidavits and documents establishing prima facie claims for breach of its two contracts with SunTrust. In response, SunTrust argues that genuine issues of material fact exist as to two of the elements listed above, namely: the validity of the contract underlying the First Claim, and Third Avenue's performance of its obligations pursuant to the First Claim.

First, SunTrust points out that the assignment attached to First Avenue's motion papers is signed by SunTrust, but not by Third Avenue. (Jarmain Decl., Ex. A.) SunTrust asserts that the only fully executed agreement states that the claim amount is for $1,311,315.36. (Long Decl. ¶ 4.) SunTrust also notes that Third Avenue filed a proof of claim in the Montgomery bankruptcy proceeding on February 25, 1998 in the amount of $1,311,315.36. (Long Decl. ¶ 6 & Def.'s Mem., Ex. A.) SunTrust argues that if Third Avenue had a valid claim for $1,562,635.04, it should have filed a proof of claim in that amount against Montgomery. Second, SunTrust alleges that Third Avenue has not provided sufficient evidence of its payment of the purchase price of the First Claim to SunTrust.[3]

Third Avenue responds by explaining that after the initial contract for $1,311,315.36 was signed, the parties agreed to revise the contract for a new total of $1,562,635.04. (Jarmain Reply Decl. ¶¶ 8–9.) On August 8, 1997, Mike Lowe ("Lowe"), an employee of SunTrust, sent Third Avenue's investment advisors a letter written on SunTrust stationary stating: "Please find the adjusted contract. The new total is $1,562,635.04 which reflects an increase totaling $251,319.68." (Jarmain Reply Decl., Ex. B.) The same day, Lowe overnighted a package with the revised contracts. (Jarmain Reply Decl. ¶ 10.) The cover letter to that package stated:

> I have enclosed the schedule of additional invoices which were added to our Montgomery Ward claim assignment. I trust you have received a fax copy of the signed contract reflecting this change. Also enclosed are three signed original copies of the contract.

(Jarmain Reply Decl., Ex. C.) Third Avenue attached a fully executed copy of the First Claim to its reply papers, in the amount of $1,562,635.04. (Jarmain Reply Decl. ¶ 12 & Ex. D.) This copy is identical in its terms to the one attached to Third Avenue's original motion papers except that it is dated August 1, 1997. (*Compare* Jarmain Decl., Ex. A. *with* Jarmain Reply Decl., Ex. D.) Brian Jarmain, an employee of Third Avenue's investment advisor, explained that he believed the August 1, 1997 date to be mistaken and that to the best of his memory, the fully signed contract was signed sometime after August 8, 1997. (Jarmain Reply Decl. ¶ 13.)

In any event, Third Avenue contends that its signature was unnecessary since "an offer may be accepted by conduct," and it accepted the terms of the First Claim by paying 35.375 percent of

---

**3.** SunTrust's Local Rule 56.1 Statement indicates that there exists a genuine issue to be tried with respect to the "total amount allegedly paid by Third Avenue to SunTrust for the purchase of claims in the Montgomery Ward bankruptcy." (Def.'s 56.1 Statement ¶ 4.) As required by Local Rule 56.1(d), this statement is followed by citation to paragraph five of the Declaration of Garry Long, which deals exclusively with the First Claim. Therefore, Third Avenue, as well as the court, assume that SunTrust takes issue with payment of the First Claim only. However, even if SunTrust meant to challenge payment of the Second Claim, its challenge would fail since it has not set forth specific facts indicating that there is a genuine issue for trial regarding Third Avenue's payment on either claim. *See* discussion *infra* note 4.

$1,562,635.04, or $552,782.15. *Liner Tech., Inc. v. Hayes*, 213 A.D.2d 881, 624 N.Y.S.2d 284 (3d Dep't 1995). (Jarmain Reply Decl. ¶ 14–17.) Third Avenue provided proof of payment in the form of the sworn declarations of Brian Jarmain, as well as copies of its account statements and wire transfers.[4] (Jarmain Reply Decl. ¶¶ 14–17 & Exs. F & G.) *See* F.R. Civ. P. 56(c) & (e).

■ Third Avenue has shown that it entered into a contract for the First Claim with SunTrust and that it met its obligations for performance under the contract. However, Third Avenue has failed to explain why it filed a proof of claim for only $1,311,315.36 a year after the contract for $1,562,635.04 was allegedly completed. This failure, in conjunction with the August 1, 1997 date on the fully executed contract, precludes a grant of summary judgment on the full amount of the First Claim. Therefore, to the extent the court grants summary judgment in favor of Third Avenue on the First Claim, such judgment must be limited to the issue of liability. *See* F.R. Civ. P. 56(c).

### C.

■ SunTrust's last argument in opposition to Third Avenue's motion for summary judgment is that it has not refused to pay Third Avenue on either claim, but rather has been diligently pursuing its remedies against the vendors to whom Montgomery allegedly made payments instead of Third Avenue. (Long Decl. ¶¶ 12 & 16.) In essence, this argument asserts that as a matter of law, SunTrust's efforts to seek payment from third parties either absolve or toll its contractual obligations to repay the purchase price of the claims.

■ Under New York law, "the initial interpretation of a contract 'is a matter of law for the court to decide.'" *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir.1996) (quoting *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 299 (2d Cir.1996)). "[I]f the contract is capable of only one reasonable interpretation, i.e., is unambiguous, [the court is] required to give effect to the contract as written." *K. Bell & Assocs., Inc.*, 97 F.3d at 637 (internal quotation marks omitted).

Here, the contractual terms of the First and Second Claims are unambiguous. As to the First Claim, SunTrust undertook to:

> immediately repay, on demand of Assignee, any Disallowed Claim, an amount equal to the amount of the Disallowed Claim multiplied by the percentage set forth in the Pricing Letter, plus interest at the Prime Rate per annum from the date hereof to the date of repayment.

(Assignments ¶ 6.) A Disallowed Claim is one that in whole or in part becomes subject to a claim of "reduction, recoupment, avoidance, disallowance or subordination, and the Adverse Assertion remains pending or unresolved for a period of more than one hundred twenty days...." (*Id.*) Since Montgomery moved to reduce the amount of the First Claim to $150,959.40 on November 1, 1999, and that assertion remained unresolved for over one hundred twenty days, SunTrust is obligated to make payment on the full amount of the purchase price of the First Claim, plus interest.

---

4. Third Avenue has put forth the sworn declaration of Brian Jarmain on the payments of both claims. (Jarmain Decl. ¶ 5.) Since SunTrust neither denied receipt of such payments nor set forth specific facts disputing these payments, SunTrust has not met its obligation to show that there is a genuine issue for trial on the matter of payment of either claim. *See* F.R. Civ. P. 56(e) ("[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.").

As to the Second Claim, SunTrust undertook "to immediately repay ... the consideration paid by Assignee hereunder, plus interest thereon at the Prime Rate per annum from the date hereof to the date of repayment," in the event that the "Bankruptcy Court does not substitute Assignee for Assignor." (Assignments ¶ 6.) Since the Bankruptcy Court failed to substitute Third Avenue as the owner of the Second Claim, SunTrust is obligated to make payment on the full amount of the purchase price of the Second Claim, plus interest.

■ Moreover, pursuant to paragraph seven of the assignment contracts, SunTrust must indemnify Third Avenue for all attorneys' fees and expenses resulting from any breach of representation, warranty or covenant. Since SunTrust breached its representation that the assignments were valid and not subject to reduction, and its covenant to repay Third Avenue if the claims were disallowed or reduced, Third Avenue is entitled to recover all resulting attorneys' fees and expenses.

In sum, no material issue of fact remains as to whether the contracts existed or whether SunTrust breached the contracts by failing to repay the purchase price of the claims. Therefore, the court grants summary judgment in favor of Third Avenue as to liability on the First Claim, and as to liability and damages on the Second Claim.

Since the court has not rendered a complete judgment on the First Claim, pursuant to Rule 56(d), F.R. Civ. P., the court shall "ascertain what material facts exist without substantial controversy." The court finds that the First Claim was for no less than $1,311,315.36. Third Avenue is therefore entitled to partial damages in the amount of $463,877.81 plus interest, attorneys' fees and expenses. This figure represents the purchase price, or 35.375 percent, of a $1,311,315.36 contract. However, "[f]inal judgment and execution would be improper at this stage, even as to uncontroverted damages, because part of the claim remains in dispute." *650 Park Ave. Corp. v. McRae,* 1987 WL 16361, at *2 (S.D.N.Y. Aug. 27, 1987) (Carter, J.) (citations omitted). Should the parties remain unable to stipulate as to the full amount of damages pursuant to the First Claim, the case will proceed to a hearing on the issue. As herein indicated, that amount is no less than $463,877.81 but no more than $552,782.15, plus interest, attorneys' fees and expenses. SunTrust's total liability under both claims shall be offset by $61,099.31, the amount it already paid to Third Avenue.

## CONCLUSION

For the foregoing reasons, Third Avenue's motion for partial summary judgment on the First Claim is granted as to liability, and is denied as to damages. In accordance with Rule 56(d), F.R. Civ. P., the court has determined that SunTrust's liability on the First Claim is no less than $463,877.81 but no more than $552,782.15, plus interest, attorneys' fees and expenses. The parties are directed to attempt to settle as to the amount of liability on the First Claim by May 10, 2001. If no settlement is reached, the parties shall inform the court, and the matter will be set for a hearing.

Once this issue of damages is concluded, Third Avenue is directed to submit an affidavit of interest due on the First Claim, indicating the calculation of the amounts therein. Third Avenue shall also submit an affidavit of attorneys' fees and expenses it has incurred in pursuing this action, accompanied by contemporaneous attorney time records, the names of the attorneys who have worked on the action, how long those attorneys have practiced law, those

attorneys' regular hourly billing rates and any other appropriate documentation. SunTrust may file papers in opposition to Third Avenue's assessment of interest, attorneys' fees and expenses on the First Claim.

Third Avenue's motion for partial summary judgment on the Second Claim is granted. SunTrust is obligated to pay Third Avenue $8,929.89 on the Second Claim, plus interest, attorneys' fees and expenses. Third Avenue is directed to present to the court, on notice, a detailed statement of interest, attorneys' fees and expenses for the Second Claim in accord with the instructions detailed above. SunTrust may file papers in opposition to Third Avenue's assessment of interest, attorneys' fees and expenses on the Second Claim.

SunTrust's total liability under both claims shall be offset by $61,099.31, the amount it already paid to Third Avenue. IT IS SO ORDERED.