■ ROBERT H. MATTHIUS, Plaintiff/Third Third-Party Defendant, et al., Plaintiff, v PLATINUM ESTATES, INC., Defendant/Third-Party Plaintiff/Third Third-Party Plaintiff/Fourth Third-Party Plaintiff-Respondent, GRYMES HILL ESTATES, INC., Defendant/Second Third-Party Plaintiff-Respondent, and JOHN CULOTTA et al., Defendants/Third-Party Defendants/Second Third-Party Plaintiffs-Respondents. JAC CONSTRUCTION CORP., Second Third-Party Defendant/Fourth Third-Party Defendant-Appellant. [903 NYS2d 477]—

In an action to recover damages for personal injuries, etc., the second third-party defendant/fourth third-party defendant, JAC Construction Corp., appeals from so much of an order of the Supreme Court, Richmond County (Maltese, J.), dated March 6, 2009, as granted the motion of the defendant/second third-party plaintiff Grymes Hill Estates, Inc., and the defendants/third-party defendants/second third-party plaintiffs, John Culotta and Robert Ricca, to confirm a referee's report dated October 21, 2008, finding that those parties were entitled to indemnification by it for their costs and attorney's fees in the main action, and granted the cross motion of the defendant/third-party plaintiff/third-third party plaintiff/fourth third-party plaintiff, Platinum Estates, Inc., to modify the referee's report to add a finding that Platinum Estates, Inc., also was entitled to indemnification by JAC Construction Corp. for its costs and attorney's fees in the main action.

Ordered that the order is affirmed insofar as appealed from, with one bill of costs payable to the respondents appearing separately and filing separate briefs.

JAC Construction Corp. (hereinafter JAC) entered into a written agreement (hereinafter the indemnification agreement) with

Grymes Hill Estates, Inc. (hereinafter Grymes Hill), of which John Culotta and Robert Ricca are the principals, on January 4, 2002. In that agreement, JAC agreed to indemnify Grymes Hill, the general contractor, Platinum Estates, Inc. (hereinafter Platinum), the owner, and their agents and employees for all damages, losses, and expenses, including attorney's fees, arising out of the performance of JAC's work, to the extent caused by JAC's negligence. JAC also agreed to obtain liability and worker's compensation insurance policies, name Grymes Hill as an additional insured, and deliver certificates of insurance, all of which it did.

On January 17, 2002, JAC and Grymes Hill entered into another written agreement (hereinafter the January 17th agreement), setting forth the work to be performed by JAC. This agreement contained a merger clause, stating that "[t]his is the entire agreement between the parties hereto, and there are no representations, promises, warranties or understandings of any kind, except as set forth in this contract."

JAC's contention that it was not obligated to indemnify Grymes Hill, Culotta, Ricca, and Platinum because pursuant to the merger clause in the January 17th agreement, that agreement superseded the prior indemnification agreement, is without merit. The purpose of a merger clause is to require full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to alter, vary, or contradict the terms of a written agreement (*see Jarecki v Shung Moo Louie*, 95 NY2d 665, 669 [2001]; *Matter of Primex Intl. Corp. v Wal-Mart Stores*, 89 NY2d 594, 599 [1997]). Where a valid contract is incomplete, extrinsic evidence is admissible to complete the writing if it is apparent from an inspection of the writing that all the particulars of the agreement are not present, and that evidence does not vary or contradict the writing (*see Valente v Allen Shuman & Irwin Richt, D.P.M., P. C.*, 137 AD2d 678 [1988]).

Here, the January 17th agreement was incomplete and ambiguous. It contained a general provision requiring JAC to provide insurance, but did not state the amount of insurance coverage or the parties to be named as insureds. Therefore, evidence of the indemnification agreement, which contained specific provisions regarding the amount of insurance to be provided and the parties to be insured, was admissible to resolve these ambiguities. The indemnification agreement however, did not vary, alter, or contradict any terms in the January 17th agreement and, thus, remained enforceable(*see Matter of Primex Intl. Corp. v Wal-Mart Stores*, 89 NY2d 594 [1997]).

Furthermore, the January 17th agreement set forth the work to be performed by JAC, but did not specifically address the issue of indemnification. Therefore, Grymes Hill and Platinum could present evidence to prove the existence of the agreement in which JAC agreed to indemnify them (*see Elbroji v 22 E. 54th St. Rest. Corp.*, 67 AD3d 957 [2009]). Since the indemnification agreement and the January 17th agreement dealt with different subject matter, the merger clause did not extinguish the indemnification agreement (*see Gordon v Patchogue Surgical Co.*, 222 AD2d 651 [1995]).

By obtaining insurance and naming Grymes Hill as an insured pursuant to the indemnification agreement, JAC demonstrated its intent to be held to that agreement.

The referee's findings are supported by substantial evidence in the record and, therefore, his report was properly confirmed (*see Matter of Lipsky v Koplen*, 282 AD2d 462 [2001]; *Barr v Barr*, 232 AD2d 316 [1996]). Skelos, J.P., Covello, Hall and Sgroi, JJ., concur.